IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Craig Perkins, | ) | Civil Action No.: 7:14-1057-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Larry Bennett, Dwight Bennett, and Advance | ) | **OPINION AND ORDER** |
| Mortgage Source, Inc. d/b/a South Carolina | ) | |
| Mortgage Association, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the defendants' motion to dismiss. (ECF No. 13.) The plaintiff has pled claims for (1) fraudulent inducement; (2) fraud; (3) negligent misrepresentation; (4) aiding and abetting; (5) civil conspiracy; (6) breach of contract; and (7) breach of contract accompanied by fraudulent act. The defendants contend that the case must be dismissed because (1) it is untimely, according to applicable statute of limitations; (2) the plaintiff has failed to join necessary and indispensable parties; and the Complaint fails to plead any plausible claim for relief.

## BACKGROUND

The facts of the Complaint, taken in the light most favorable to the plaintiff, are as follows. The plaintiff is an individual residing in the State of Kentucky. (ECF No. 1 ¶ 1.) Defendants Dwight Bennett and Larry Bennett are individuals residing in the state of South Carolina. *Id*. ¶¶ 2, 3. Defendant Advance Mortgage Source, Inc., d/b/a South Carolina Mortgage Associates ("SCMA") is a South Carolina company. *Id*. ¶ 4. In July 2010, Defendant Larry Bennett, who at the time was an operations manager for Defendant SCMA, contacted the plaintiff. *Id*. ¶ 7. Larry Bennett advised the plaintiff that he and

SCMA were looking for investors in an "ultra-safe" investment. *Id*. ¶ 8. Larry Bennett informed the plaintiff that the investment included lending one hundred and fifty thousand ($150,000.00) dollars to William Marango ("Marango") and Mojave Property ("Mojave") to secure financing as a down payment on the Wolf Ridge Ski Resort located in North Carolina. *Id*. ¶ 9. In return, the plaintiff would receive a return of his principle investment, as well as a return on the investment in the amount of forty thousand ($40,000.00) dollars, on or before September 3, 2010. *Id*. ¶ 15. Further, the plaintiff would receive five hundred ($500.00) dollars per week in the event the transaction did not close on or before September 3, 2010. *Id*. ¶ 16. Larry Bennett advised the plaintiff that Marango and Mojave would secure the investment through an apartment located in Limestone, Aroostook County, Maine, which would be used as collateral. *Id*. ¶ 10. Larry Bennett advised the plaintiff that the apartment complex was listed for sale for over one million two hundred thousand ($1,200,000.00) dollars and was only encumbered by one (1) mortgage in the amount of one hundred and fifty thousand ($150,000.00) dollars. *Id*. ¶ 11.

On or about August 4, 2010, Larry Bennett emailed the plaintiff the Mortgage Note and Mortgage Deed for the apartment complex along with wiring instructions for the one hundred and fifty thousand ($150,000.00) dollars. *Id*. ¶ 14. Further, Larry Bennett allegedly assured the plaintiff that after the funds were transferred and the Mortgage Note was executed, he would personally file the Mortgage Note and the Mortgage Deed in the state and county in which the apartment complex was located. *Id*. The plaintiff promptly wired the requested funds per instructions. *Id*. On August 9, 2010, and again on August 13, 2010, the plaintiff sent emails to Larry Bennett inquiring if the closing date for the Wolf Ridge Ski Resort had been established, to which he received no response. *Id*. ¶ 17. On

or about October 4, 2010, the plaintiff received a five hundred ($500.00) dollar check from Marango, individually, for late fees under the Mortgage Note. *Id.* ¶ 18. This is allegedly the only correspondence between the plaintiff and Marango. *See Id.* ¶¶ 7-33. When the plaintiff attempted to negotiate the check, it was returned as having "not sufficient funds" ("NSF"). *Id.* ¶ 18. After receiving the NSF payment, the plaintiff contacted Larry Bennett to advise him of the NSF check and requested a copy of the recorded deed that Larry Bennett promised and represented to the plaintiff that he, or SCMA, had recorded in August 2010. *Id.* ¶ 19.

After some time, the plaintiff learned that the deed had not been recorded; he eventually filed the Note and Deed himself. *Id.* ¶¶ 21-23. From October 2010 to May 2011, numerous emails and telephone calls were exchanged between the plaintiff and Larry Bennett in which Bennett, on behalf of SCMA, promised that the closing of the Wolf Lodge Ski Resort would occur "in the near future" and that the plaintiff's investment was safe. *Id.* ¶ 24.

In May 2011, a senior mortgage holder foreclosed and sold at auction the Maine apartment complex that was allegedly securing the plaintiff's investment. *Id.* ¶ 25. The complex sold for one hundred and eighty-seven thousand ($187,000.00) dollars, which did not exceed the first lien holder's secured amount, allegedly in direct conflict with the defendants' earlier assurances that the property was only encumbered by one mortgage in the amount of one hundred and fifty thousand ($150,000.00) dollars. *Id.* The plaintiff received no monies from the sale of the apartment complex. *Id.* In June 2011, the plaintiff contacted Defendant Dwight Bennett, president of SCMA, regarding the events surrounding the loan, representations made by Larry Bennett and SCMA, Larry Bennett

and SCMA's failure to record the Mortgage Note and Mortgage Deed and the sale of the Maine apartment complex. *Id*. ¶ 26. As a result of this conversation, Dwight Bennett, on behalf of SCMA, sent an offer letter to the plaintiff in Kentucky advising the plaintiff that the closing of Wolf Ridge Ski Resort was "imminent." *Id*. ¶ 27. Dwight Bennett further offered to pay one-half (½) or ninety thousand ($90,000.00) dollars of SCMA's commission on the sale of the ski resort in exchange for the plaintiff's agreement to forgo filing litigation against Dwight Bennett, Larry Bennett, or SCMA. *Id*. The plaintiff did not accept this offer and did not sign the offer letter. *Id*. ¶ 28.

In January 2012, the plaintiff retained a South Carolina law firm and sent a demand letter to Defendant SCMA that was rejected. *Id*. ¶ 29. Despite the demand by the plaintiff, the defendants allegedly refused to comply. *Id*. ¶ 30. On May 23, 2013, the plaintiff commenced a lawsuit against Defendants in Jefferson County, Kentucky seeking to recover actual and punitive damages for the conduct described above. *Id*. ¶ 31. The defendants removed the lawsuit to federal court and moved to dismiss the action on the grounds that defendants were not subject to personal jurisdiction in the State of Kentucky. *Id*. ¶ 32. On November 12, 2013, the United States District Court for the Western District of Kentucky dismissed the claims against these defendants based on lack of personal jurisdiction. *Id*. ¶ 33.) On March 20, 2014, the plaintiff filed the instant action. (ECF No. 1).

## STANDARD

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).  Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).  Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).  "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

-5-

The standard for motions pursuant to Federal Rule of Civil Procedure 12(b)(7) will be discussed below.

## DISCUSSION

The Court has concerns about the quality of the case against the defendants and never wants litigation to proceed unnecessarily.  At the same time, the Court is constrained by various standards of review to be cautious in presuming too much or taking too convincingly the plea of a party, especially a defendant, that things are not what they seem to be.  Our system of justice does best with more information not less.  Admittedly, there are various legal red flags present but the Court would reject any as justifying dismissal now.

The defendants first contend that each of the plaintiff's causes of action is barred by respective statute of limitations.  The plaintiff alleges (1) fraudulent inducement; (2) fraud; (3) negligent misrepresentation; (4) aiding and abetting; (5) civil conspiracy; (6) breach of contract; (7) breach of contract accompanied by a fraudulent act.  Dismissal under Rule 12(b)(6) is appropriate on statute of limitations grounds when a complaint and attached exhibits shows that the actions are time-barred. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The statute of limitations of each of these actions is three years. *See* S.C. Code Ann. § 15–3–53 (providing a three-year statute of limitations for actions arising from fraud, contract or tort); N.C. Gen. Stat. § 1–52 (same).  For the plaintiff's first five causes of action, which allege fraudulent conduct and misrepresentation, "[t]he statutory limitations period begins to run when a [plaintiff] could or should have known, through the exercise of reasonable diligence, that a cause of action might exist in

-6-

his or her favor, rather than when a full-blown theory of recovery is developed." *Christensen v. Mikell*, 476 S.E.2d 692, 694 (1996); *see also Sayman v. Lehman Bros. FSB*, 2013 WL 6254124 (W.D.N.C. Dec. 4, 2013) (citing Jennings v. Lindsey, 318 S.E.2d 318, 321 (N.C. 1984) and holding that "a claim for fraud/misrepresentation must be brought within three years of the time [p]laintiffs knew or reasonably should have known of the facts giving rise to the fraud/misrepresentation.").

For the plaintiff's final two causes of action, which sound in contract, the statute of limitations begins to run "at the time a contract is breached or broken." *State v. McClinton*, 369 S.C. 167, 173, 631 S.E.2d 895, 898 (2006); *Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm.*, 312 S.E.2d 421, 424 (N.C. 1984) (same); *see also Wilson Grp., Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 424 (D.S.C. 1995) (holding that a cause of action for a breach of contract accompanied by a fraudulent act is governed by the limitations period for contract actions). In determining when the limitations period begins to run, "[t]he standard . . . is objective rather than subjective." Gibson v. Bank of Am. N.A., 383 S.C. 399, 406, 680 S.E.2d 778, 782 (Ct. App. 2009).

Here, the plaintiff's Complaint, which was filed on March 20, 2014, very reasonably indicates, on its face, that the action is time-barred. Most notably, the plaintiff states that "[o]n October 19, 2010," which was nearly three years and six months before any lawsuit was filed here in South Carolina, Plaintiff "realiz[ed] that Larry Bennett and SCMA had been untruthful [and] misrepresented information to him, . . . ." (Pl.'s Compl. ¶ 23.)

But, the Court is convinced that equitable tolling should save any timeliness concerns. The plaintiff had previously filed an action against the Bennett defendants in the

United States District Court for the Western District of Kentucky. *See Perkins v. Bennett et al.*, No. 3:13-cv-695, 2013 WL 6002761 (W.D. Ky. Nov. 12, 2013). The Bennett defendants were dismissed for lack of personal jurisdiction. The plaintiff, therefore, contends that the applicable statute of limitations should be tolled during the pendency of the Kentucky action.

The South Carolina Supreme Court has not established a strict set of circumstances in which equitable tolling may be applied, finding that "it may be applied where it is justified under all the circumstances." *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 33 (2009). "The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *Id.* The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use. *Id*. at 32. The supreme court cautioned, "[E]quitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use." *Id*. at 33.

In *Hooper*, the supreme court recognized the various tests available to apply the doctrine including that "[f]ederal precedent equitably tolls the limitations period in three circumstances: (1) where the plaintiff has actively pursued his or her judicial remedies by filing a timely but defective pleading; (2) where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim; or (3) where the plaintiff, by exercising reasonable diligence, could not have discovered essential information bearing on his or her claim." *Id.*; *see also Irwin v. Dep't of Veterans Affairs*, 498

-8-

U.S. 89, 96 (1990).

The plaintiff here was diligent to pursue his remedies, which initially proved defective in Kentucky.  The defendants contend that he had reason to know such deficiencies ahead of time and, therefore, should not benefit from any equity now.  As will be discussed below with respect to the joinder of necessary parties, this case presents some procedural complexity in securing jurisdiction over all the parties in one forum.  The defendants admit that the courts, here, likely could not have been able to exercise personal jurisdiction over Marango and Mojave.  (Mot. Dismiss at 23.)  It is not apparent that the plaintiff intentionally pursued the defendants into an improper forum under circumstances that should penalize him now.  Resolution on the merits is always preferred and the plaintiff's previous attempts to prosecute his case do not evidence abandonment or neglect.  The prior suit certainly placed the defendants on notice of the claims against them and any lapse in time (approximately four months) between the dismissal in Kentucky and the filing here does not work any meaningful prejudice.  *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 204-05 (3d Cir. 2002).

The Court would consider the applicable statutes of limitations tolled during the pendency of the Kentucky action and, therefore, the filing, here, timely.

## II.    Joinder of Necessary Parties

The defendants also contend that the case must be dismissed for the plaintiff's failure to join necessary and indispensable parties.  The defendants contend that Mojave and Marango are necessary to this action but for various reasons cannot be joined such that dismissal is the only appropriate remedy.

"Dismissal of a case [for nonjoinder] is a drastic remedy . . . which should be employed only sparingly." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir.2000). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). The Court must proceed pragmatically, and "consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Schlmberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir.1994) (citation omitted). "[I]t is important to bear in mind the nature of the relief that is requested in the proceedings before the court." *Legacy Wireless Servs., Inc. v. Human Capital, LLC*, 314 F. Supp. 2d 1045, 1051 (D. Or. 2004). The burden is on the moving party to "show that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

As is widely understood, a motion pursuant to Rule 12(b)(7) requires a two-step inquiry. See Fed. R. Civ. P. 12(b)(7).  First, the court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Owens–Ill., Inc.*, 186 F.3d at 440 (quoting *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917–18 (4th Cir.1999)). If the absent party is necessary, it will be ordered into the action.  *Id*. If the party cannot be joined because its joinder will destroy diversity, the court must then determine "whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id*.

-10-

The Court simply disagrees that Mojave and Marango are necessary. A party is necessary pursuant to Rule 19(a) if (1) the court cannot accord complete relief among existing parties without the absent party or (2) the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence" may either (I) "as a practical matter impair or impede the person's ability to protect the interest" or (ii) subject an existing party to "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1).

The Court can afford complete relief to the present parties, and the interests of Mojave and Marango are not impaired. Importantly, Mojeave and Marango have not claimed any interest in this present litigation. *See Wellin v. Wellin*, 2015 WL 628071, at *8 (D.S.C. Feb. 12, 2015); *see also United States v. Bowen*, 172 F.3d 682, 689 (9th Cir.1999) (holding that absent party was not a required party because it was aware of the action and chose not to claim an interest); *Harvill v. Harvill*, 2013 WL 1245729, at *4 (M.D. Tenn. Mar.27, 2013) (noting that courts "have . . . routinely held that in order for a party to be necessary, she must first 'actually claim' an interest in the subject matter of the suit" and holding that Rule 19(a) "appears to demand more than a finding that the absent party may have an interest, but instead affirmatively requires that the absent party claim the interest"). The defendants have provided no indication that the absent parties have actually claimed any interest in this action. The absent parties' failure to actually claim an interest is sufficient grounds to deny the motion under Rule 19. *See Wellin*, 2015 WL 628071, at *8.

But, even if Mojave and Marango are somehow necessary, the Court would not find them indispensable. Under Rule 19(b), a party is indispensable, if "in equity and good

conscience," the action should be dismissed rather than proceed without the party. Fed. R. Civ. P. 19(b). The factors to be considered by the court include: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to that person or the existing parties; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, the shaping of relief, or other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

The Court is mainly concerned that the plaintiff will be denied an adequate remedy if the current action is dismissed. *See Chadwick v. Arabian Am. Oil Co.*, 656 F. Supp. 857, 863 (D. Del. 1987) (finding that the most important factor is whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder); *Reliance Ins. Co. v. Wisconsin Natural Gas Co.*, 60 F.R.D. 429, 432 (E.D. Wis. 1973) (noting that the fourth factor is perhaps the most important). The fact that the plaintiff has an action in Kentucky against Mojave and Marango does not guarantee result. And, as discussed, the plaintiff cannot pursue his rights, of whatever kind, against the Bennett defendants there. It is conceded that moving any action against Mojave and Marango, here, will either fail for a statute of limitations defense or want of personal jurisdiction. The Bennett defendants have tried to triangulate the plaintiff procedurally – he cannot bring an action against them in Kentucky, or the Mojave and Marango defendants here, and, thus, not against the Bennett defendants here, either.

The case should not be dismissed.

-12-

III.     **Failure to State a Claim**

Lastly, the defendants have made various challenges to the sufficiency of the claims pled. The Court has reviewed the pleadings and believes the Complaint includes plausible claims for relief: the allegations of fraudulent inducement include alleged misrepresentations of past or present fact (Compl. ¶ 11); the Bennett defendants are alleged to have had a pecuniary interest in the business venture, *id*. ¶ 27; a cause of action for aiding and abetting is recognized under South Carolina law, *see Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. Ct. App. 2008); and there is barely sufficient averment of special damage, (Compl. ¶¶ 30, 32). The defendant may renew its legal arguments against them at summary judgment.

## **CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss (ECF No. 13) is DENIED.

IT IS SO ORDERED.

s/Bruce Howe Hendricks
United States District Judge

March 24, 2015
Greenville, South Carolina